1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| KATHRYN HOGAN, CHARLOTTE MARIE HOGAN, and THOMAS SLADE HOGAN,              Plaintiffs,    v. FRESNO COUNTY SHERIFF'S DEPUTY MICHAEL ROBINSON, PATRICIA TOWNE, UNKNOWN LAW ENFORCEMENT OFFICERS, DOES 1-20, and THE COUNTY OF FRESNO, CALIFORNIA              Defendants. | CIV- F-03-6408 AWI LJO ORDER ON PLAINTIFFS' MOTION FOR THE APPOINTMENT OF A GUARDIAN AD LITEM FOR THOMAS SLADE HOGAN |

21
22
23
24
25
26
27
28

**BACKGROUND**

Plaintiffs have filed a second motion for the appointment of a guardian ad litem for Thomas Hogan. Plaintiffs's first motion for appointment of guardian ad litem was made on the basis that there existed a conflict or potential conflict between Thomas Hogan and his conservator of the estate, Raymond Love. The Court denied the first motion without prejudice on January 31, 2005, on the basis that Plaintiffs failed to present clear evidence of a conflict or abuse of trust by Love. On April 19, 2005, Plaintiffs filed the second motion for appointment on

the ground that Love has declined to participate in the lawsuit without consulting with Plaintiffs' counsel or reviewing discovery documents or files, and on the basis of cost to the estate rather than on the merits of the case. Plaintiffs again request that Plaintiff Kathryn Hogan be appointed as guardian ad litem under Federal Rule of Civil Procedure 17(c). On May 31, 2005, a hearing was held on Plaintiffs's motion. At the hearing, the Court ordered Raymond Love to submit a declaration and stated that the matter would then be taken under submission. The supplemental declaration has now been received.

## MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM

### Plaintiffs' Argument

Plaintiffs argue that Love has refused to participate without consulting with Plaintiffs' counsel or reviewing any discovery documents or files in Plaintiffs' counsel's possession. Also, Love's decision is based only on reasons related to the cost of his time to the Hogan Estate and his assessment that those costs would not be approved by the estate instead of on the merits of the pending claims.

Because of Love's refusal to act, the only way the case can go forward on behalf of Thomas Slade Hogan is through the appointment of an ad litem under Rule 17. Plaintiffs request that Plaintiff Kathryn Hogan be named Thomas Hogan's guardian ad litem. Plaintiffs point out that Kathryn Hogan is Thomas Hogan's daughter, that Thomas Hogan and Kathryn Hogan reside at the same address in Sacramento (essentially that Thomas Hogan lives with Kathryn Hogan), Kathryn Hogan is fully competent and otherwise capable of serving as the ad litem, Kathryn Hogan has been appointed conservator of the person for Thomas Hogan and is presumed to act in his best interest, there are no adverse interests that would preclude Kathryn Hogan from serving as the ad litem, and Kathryn Hogan could serve as the ad litem at no cost to the estate. Plaintiffs also argue that Thomas Hogan has potentially viable causes of action which were not subject to dismissal.

Plaintiffs have attached two exhibits and one declaration.  The declaration is by Kathryn Hogan and states that the factual averments in the motion are correct and within her knowledge and that she consents to being appointed ad litem.  The first exhibit is a letter from Raymond Love's attorney, Catherine Sharbaugh, dated April 5, 2005.  The letter is to Plaintiffs's counsel and reads:

> This letter is to inform you that my client, Raymond Love, in his capacity as Conservator of the Estate of Thomas S. Hogan, has decided not to serve as legal representative of Dr. Hogan in the above referenced matter.
>
> Mr. Love believes that the time he would be required to spend on behalf of the conservatee in this matter would unduly the Hogan estate at a time when measures are being taken to limit such excesses.
>
> Mr. Love and I have both had an opportunity to examine much of the information that has been generated regarding the case over the past several months.  We do not believe that we would be able to persuade our local probate judge that the cost to the conservatorship estate would be a valuable and practical use of Dr. Hogan's assets.
>
> We wish you the best results in your pursuit of this matter.

Exhibit 1 to Plaintiffs' Motion to Appoint Guardian Ad Litem.

The other exhibit is an order appointing Kathryn Hogan and Charlotte-Marie Hogan as conservator of the person of Thomas Hogan.  The paper was filed April 15, 2005, and is signed by Judge Gregory Fain of the Fresno Superior Court.  The letter of conservatorship is also included and dated April 18, 2005.  The appointment as conservator of the person includes powers regarding medical care and the ability to place Thomas Hogan in a nursing home.

**Defendants' Joint Opposition**[1]

Defendants argue that after the Court denied Plaintiffs' first motion, Plaintiffs's counsel

---

[1] Defendants also have filed a motion for judicial notice that covers orders from this Court on Plaintiffs' (First) Motion for Appointment of a Guardian Ad Litem and Defendant's Motion to Dismiss, pleadings by the Plaintiffs in this case, affidavits by Bruce Bickel and Defendant Michael Robinson from the 2001 conservatorship proceedings in probate court, and declarations by Defendant Towne and Conservator Love filed in this Court in opposition to the first motion for appointment of an ad litem.  No opposition to this request has been made.  A court shall take judicial notice of an appropriate fact if requested by a party and supplied with the necessary information.  See Fed. R. Evid. 201.  Judicially noticed facts often involve matters of public record and proceedings in the court or in other courts, either State or Federal.  See United States v. Southern Cal. Edison Co., 300 F.Supp.2d 964, 974 (E.D. Cal. 2004).  Given the lack of opposition, the Court grants Defendants' motion for judicial notice.

contacted Love and asked him to sponsor the litigation.  Defendants argue that, after carefully

considering the matter, reviewing the case documentation, evaluating the financial condition of

the Estate, considering the impact which the litigation would have on Mr. Hogan, and consulting

with counsel, Mr. Love (through his attorney) submitted a letter to Plaintiffs' counsel.  Therein,

Love expressed that it was neither in Thomas Hogan's nor the Hogan Estate's best interest to be

parties to this litigation.  Based solely on this communication with Love, Plaintiffs have renewed

the motion, but have again failed to bring forth any evidence that Love abused trust or that his

decision was not in the best interest of the Estate.

Defendants argue that Love is serving the best interests of the estate.  The assertion that

Love failed to consult with counsel or look at any documents in arriving at his decision is

unsubstantiated by documentary evidence or declarations and thus, has no basis.  In fact,

Catherine Sharbaugh attached a declaration which reveals that both she and Love reviewed the

first and second amended complaints, both of Plaintiffs' motions for appointment of an ad litem,

Defendants' motions to dismiss and Plaintiffs' oppositions, and this Court's orders.  The

Sharbaugh declaration also states that both she and Love examined the information generated in

the instant action and came to the conclusion that the costs involved in pursuing the litigation

would not be a valuable or practical use of the estate's assets and were thus, not in the

estate's/Thomas Hogan's best interests.  See Sharbaugh Declaration at ¶¶ 2-3; April 5, 2005,

letter.  The mere fact that Love has declined to pursue litigation is not an abuse of trust.  Love

and his attorney have reviewed the allegations made by Plaintiffs, "have been informed of or

reviewed the voluminous documents in this case, know the background history, and understand

that this litigation is going to be very expensive and time-consuming.  It is perfectly reasonable

for Love to weigh the financial risks and burdens the instant litigation will surely require and

come to the conclusion he has."  Defendants argue that the failure to consider the financial

implications of the lawsuit would be an abuse of trust.

Defendants further argue that Love exercised ordinary care as required by Probate Code §

4

2401(a).  Love's decision is prudent and is similar to *Pillsbury v. Karmgard*, 22 Cal.App.4th 743 (1994).  In *Pillsbury*, the beneficiary of the trust brought a malicious prosecution suit against third parties and also alleged that the trustee, Wells Fargo, failed and refused to bring the malicious prosecution action on behalf of the trust.  The court held that the beneficiary was properly required to show that the failure of the trustee to bring the suit was "negligent, wrongful, or otherwise improper."  The court then found ample evidence to show reasonable conduct; in particular, the Court noted that the trustee made its decision not to pursue litigation after conferring with trusted counsel and "based upon the facts known to them and reasonable inferences when faced with a questionable claim costly to pursue."  Id. at 762.  In the case at bar, Defendant's argue that Love is well acquainted with the facts of the case, has reviewed motions and pleadings and orders, and his in-depth declaration in response to the first ad litem motion shows that he is adequately informed.

**Plaintiffs' Reply**

Plaintiffs reply that Defendants are misstating the law.  The law cited by the Court in the first ad litem motion is that appointment is appropriate either upon a showing of conflict or the refusal of the conservator to participate in the suit.  See T.W. by Enk v. Brophy, 124 F.3d 893, 896 (7th Cir. 1997).  As Love has decided not participate for reasons wholly unrelated to the merits of the lawsuit, there was no need for Plaintiffs to again attempt to prove a conflict of interest.  The exhibits attached to Plaintiffs' motion show that Love declined to represent Thomas Hogan's interests in this case without reviewing any documents in Plaintiffs' counsel's possession, although such documents exceed 15,000 pages.  Rather, Love's letter makes clear that he based his decision by review of public documents and documents provided by the defendants.  This short shrift review cannot be considered due diligence because reviewing 1% of relevant documentation is not the basis of a considered decision.

Additionally, Plaintiffs argue that the Hogan estate has not paid one dime of the Plaintiffs' expenses in this case and is not contractually obligated to pay one dime in the future.

"Moreover, any disbursement from the Hogan estate would have to have the blessing of the conservator of the estate, Love, something which, even if it were to be requested (and it will not be) would hardly be approved."  "The clear fact that the Hogan estate will only pay litigation expenses if Love is involved as a party representative should not be ignored, for it clearly indicates that the appointment of a guardian ad litem is in the best interest of the Hogan estate."

### Supplemental Declaration of Raymond Love

On June 11, 2005, a supplemental declaration of Raymond Love was filed as per the Court's instruction.  The declaration is ten pages long and quite detailed.  It has several attached exhibits which are correspondences between Plaintiffs' counsel and Love/Love's counsel.  In relevant part, Love declares as follows:

Love was appointed conservator of the estate for Thomas Hogan in October 2001 and currently remains in that position.  See June 9, 2005, Declaration of Raymond Love at ¶ 1.  Love has over 50 years experience in administering estates, conservatorships, and trusts.  Id. at ¶ 2.  That experience includes managing investments, maintenance of proper accounting records, preparations of statements to beneficiaries and courts, assembly and inventory of assets, payments of debts and creditors's claims, maintenance of real estate, meeting the needs of conservatee maintenance, and administration and settlement of estates.  Id.  As part of his fiduciary duties, Love must make decisions regarding which financial, legal, or other obligations are in the best interest of the conservatee/the estate.  Id. at ¶ 3.  In deciding whether litigation is in the best interest of a conservatee, Love considers, the merits of the proposed litigation, the likelihood of success, and the potential costs to the estate.  Id. at ¶ 4.

Love declares that he was not consulted before this suit was filed naming Thomas Hogan as a plaintiff.  Id. at ¶ 5.  The first time Love was contacted by Plaintiffs' counsel was February 9, 2005 by letter.[2]  Id. at ¶ 6.  The letter asked whether Love would represent Thomas Hogan's interests in the case.  Id.  The letter also characterized Love as a "defense witness" and suggests

---

[2]The letter is attached as Exhibit A to Love's declaration.

that this constrained counsel's ability to provide detailed information regarding the merits of the case.  Id.  Counsel did suggest that he possessed sufficient evidence to support the allegations made in the active complaint.  Id.

Regarding the February 9, 2005, letter, Love firstly declares that he is neither a defense witness nor a plaintiffs' witness and that his intention is to objectively evaluate the issue as to whether entering this litigation is in the best interest of Thomas Hogan's estate.  Id. at ¶ 6(A).  Love declares that if he so believed, he would join the litigation and that he has no bias against any party.  Id.  Secondly, Love declares that the February 9 letter made it clear to Love that Plaintiffs' counsel was less than willing to provide him with detailed information.  Id. at ¶ 6(B).  Also, the letter did not ask Love to review any records, nor did the letter contain any documents to review other than a copy of the complaint.  Id.  Thirdly, Love consulted with probate counsel, Catherine Sharbaugh, with whom he reviewed records and concluded that he needed more information.  Id. at ¶ 6(C).  Love declares that he has never been asked to review the 15,000 documents in Plaintiffs' possession.  Id. at ¶ 7.

On February 18, 2005, Love responded to the February 9, 2005, letter.  Therein, Love requested additional information.[3]  Id.  First, Love stated that he needed to understand Plaintiffs's counsel's fee and expense arrangement.  Id. at ¶ 7(A).  Love declares that he needed further information regarding the potential costs of litigation to the estate including:  the source of Plaintiffs' counsel's fees and costs incurred throughout the litigation; which costs, expert witness fees, and possible attorneys' fees the Estate would be liable for if Plaintiffs lost; and as Love is compensated for his services, Plaintiffs needed to be aware of that additional expense and Love did not believe that the cost should be borne by the estate.  Id.  Second, Love advised that he needed to review all of the documents filed by both sides in this matter.  Id. at ¶ 7(B).  Love declares that he felt he needed to review this information because he was never asked to be a part of the litigation and had not been sent the information.  Id.  Third, following an anticipated

---

[3]The February 18, 2005, letter from Love is attached to Love's declaration as Exhibit B.

review of the documents, Love advised that he wanted to discuss the probability of success.  Id. at ¶ 7(C).  Love declares that the probability of success is of critical importance as it allows him to weigh potential costs with potential benefits.  Id.  Love declares that he wished to discuss these issues in good faith and seriously consider whether joining the lawsuit was in the best interest of Thomas Hogan and the Estate.  Id.  Accordingly, Love declares that before agreeing to Thomas Hogan joining the lawsuit, Love intended to review all court filed documents, discuss the matter with his retained counsel, meet with plaintiffs' counsel, and then review additional documents in the custody of Plaintiffs' counsel.  Id. at ¶ 7(D).

Love declares that he received a response dated February 28, 2005, from Plaintiffs' counsel.[4]  Id. at ¶ 8.  In the letter, Plaintiffs' counsel explains that he is paid on a contingency basis with a retainer.  Id.  Love explains that although Plaintiffs' counsel stated that the Estate has paid nothing, counsel did not say that the Estate would not be liable for his fees or the defense costs should the defense win.  Id.  Love states that this was an assurance that he needed before committing the Estate to litigation.  Id.  Love also declares that the letter stated that Plaintiffs' counsel could not discuss privileged matters and counsel made it clear that he would only disclose that which had been turned over to the defense.  Id.  Love declares that there was no description of what had been turned over and did not provide any specifics regarding the likelihood of success.  Id.  Love declares that he did not receive any specifics regarding the evidence that would be used to support Plaintiffs' claims.  Id.

Love declares that after conferring with his counsel, reviewing the documents that had been filed, and considering the issues extensively, Love had his attorney send a letter dated April 5, 2005, to Plaintiffs' counsel informing him of the decision not to join the federal lawsuit.[5]  Id. at ¶ 9.  Love explains that he decided not to join the lawsuit for numerous reasons.  First, Love declares that he was not presented with any evidence demonstrating a probability of success on

[4]The February 28, 2005, letter is attached to Love's declaration as Exhibit C.

[5]The letter is attached to Love's declaration as Exhibit D.

the merits.  Id. at ¶ 9(A).  Love declares that he was only provided a response that there are no

guarantees in litigation and that there was evidence to prove the claims.  Id.  Love declares that

the information was not provided because Plaintiffs believed that Love was a "defense witness."

Id.

Second, Love understands that Plaintiffs are alleging a conspiracy between Robinson and

Towne.  Id. at ¶ 9(B).  Since October 2001, Love declares that he has not received or seen any

corroborating evidence.  Id. at ¶ 9(B)(i).  Love declares that in 2001, Kathryn Hogan requested an

accounting of Towne's activity because she believed that there were improprieties.  Id.  Love

declares that he took the allegations seriously and looked into them diligently.  Id.  Towne

provided two boxes of information, which was delivered to a court-appointed attorney (Ruth

Ratzlaff), and Kathryn Hogan provided information that she believed supported her claims

against Towne, including summaries of receipts, graphs, and other financial documents.  Id.

Love reviewed the records, which included bank statements, files from packing houses, general

ledger reports, checkbooks, and other financial documents.  Id.  Love concluded that he saw no

improprieties and that an accounting would be a waste of resources.  Id.  Further, Love declares

that he is aware that Kathryn Hogan filed a complaint with California Board of Accountancy

against Towne, making similar allegations as in the federal lawsuit.  Id. at ¶ 9(B)(ii).  Love

declares that he understands that the Board reviewed the complaint and found it meritless.  Id.

Furthermore, Love declares that apart from the accounting and ranch records, he independently

investigated Kathryn Hogan's allegations that Towne's practices had lead to a depreciation of the

Hogan citrus ranch.  Id. at ¶ 9(B)(iii).  Love declares that he spoke with Shawn Stevenson, the

ranch manager,[6] who told him that Towne was only acting as an accountant and that the decline

in the ranch's value was due to market fluctuations.  Id.  Love declares that he then spoke to

Owen Hunter, Vice President of Agriculture Management at Wells Fargo Bank.  Id.  Hunter

---

[6]Love explains that Stevenson was hired by the Hogan Living Trust Trustee, Bruce Bickel, to manage the
Hogan ranch property.

concurred with and echoed Stevenson's assessment.  Id.  Love declares that based on the input of these "very knowledgeable" individuals, he concluded that Kathryn Hogan's assertions were without merit.  Id.

Furthermore, Love declares that he understands that Plaintiffs allege that Defendants concocted an elder abuse investigation.  Id. at ¶ 9(B)(iv).  Love declares that prior to deciding not to join this lawsuit, he reviewed the declaration of Michael Robinson wherein Robinson specifically delineates the substantial evidence that he had obtained and witnesses he had discovered regarding elder abuse by Kathryn Hogan.  Id.  Love declares that he learned from Ratzlaff that there was no need to proceed further with the elder abuse investigation because the conservatorship would be going into effect and would curb further abuses.  Id.  Love states that he received information that the elder abuse investigation was not terminated because of lack of merit, but because of the conservatorship.  Id.

Additionally, based on his experience with the Hogan Estate, Love declares that at the time he decided not to join the lawsuit, he believed that he had "a very good working understanding of the contentions made by Kathryn Hogan, the financial assets of the estate, and the causes for any decline in the farm property."  Id. at ¶ 9(B)(v).  With respect to the allegations in the complaint, Love declares that from his investigation, he did not see that Thomas Hogan had sustained any material harm from Towne, Robinson, or the County of Fresno because: market fluctuations diminished the value of the ranch, Thomas Hogan's mental capacity has prevented him from practicing medicine, Thomas Hogan has dementia and Alzheimer's and his relationship with his family appears no worse than it was at the time of the defendants's alleged misconduct.  Id. at ¶ 9(B)(vi).

Love then declares that he harbors "serious concerns" about the costs that will be borne by the Estate if Thomas Hogan is a plaintiff.  Id. at ¶ 9(C).  First, Love declares that he has not received assurance that the Estate would not pay any of Plaintiffs' counsel's fees or front litigation costs as the litigation moves forward.  Id. at ¶ 9(C)(i).  Second, Love declares that if the

defense wins, the Estate would potentially be subject to expert witness fees, costs, and attorneys' fees. Id. at ¶ 9(C)(ii).  Love declares that both sides have indicated that this is a complex case and nearly 100 witnesses have been identified (many of whom will likely be deposed), and that there will likely be expert defense witnesses retained (such as forensic accounting experts, land value specialists, and elder abuse consultants).  Id.  Third, Love declares that he is not satisfied that the time necessary for himself and his attorney to review documents, monitor the case, and participate in critical decisions would be bourne by sources other than the Estate. Id. at ¶ 9(C)(iii). With respect to the 15,000 pages of documents, review of these documents at 200 hrs and Love's rate of $90/hr would generate $18,000 in costs.  Id.  Love declares that his understanding, without any evidence to the contrary, is that the Estate would have to bear such costs.  Id.  Fourth, Love declares that his experience with the Estate has caused him to gain an understanding of the financial condition of Kathryn and Charlotte-Maire Hogan.  Id. at ¶ 9(C)(iv).  Based on his experience with the Estate, Love declares that it appears that the daughters do not have the money to pay any costs of litigation should they arise, and, therefore, the costs would most likely be pursued against the Estate.  Id.  Love declares that Thomas Hogan is 84 years old and lives on a fixed income, and his expenditures are more than his income. Other than Alzheimer's, Thomas Hogan is physically healthy.  Id. at ¶ 9(C)(v).  In considering Thomas Hogan's current and future circumstances, Love declares that he feels that entering into this litigation would jeopardize both his current and future economic stability.  Id.

Based on the above considerations, his review of voluminous documents during the course of the conservatorship beginning in October 2001, and his 50 years experience in acting as a conservator, Love declares that he does not think that the insertion of Thomas Hogan as a plaintiff is a valuable or practical use of the Estate's assets, nor does he believe that the probate judge would approve.  Id. at ¶ 9(C)(vi).  Love declares that Plaintiffs' counsel did not discuss these issues or provide any documents for him to review, other than initial discovery disclosure and the complaint.  Id. at ¶ 10.  Love declares that in making his decision, he exercised his

judgment in deciding what is in the best interest of Thomas Hogan.  <u>Id.</u> at ¶ 11.

## **LEGAL STANDARD**

Federal Rule 17(c) states:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person.  An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Fed. R. Civ. P. 17(c).

"As a general rule, a federal court cannot appoint a guardian ad litem in an action in which the infant or incompetent already is represented by someone who is considered appropriate under the law of the forum state." <u>T.W. by Enk v. Brophy</u>, 124 F.3d 893, 896 (7th Cir. 1997); <u>Developmental Disabilities Advocacy Center, Inc. v. Melton</u>, 689 F.2d 281, 286 (1st Cir. 1982); <u>Wolfe v. Bias</u>, 601 F.Supp. 426, 427 (S.D. W. Va. 1984).  The district court is "obligated to abide by the State's determination of who shall represent the incompetent . . . [and the court's] power to appoint under Rule 17(c) should not be used to circumvent the mandate in Rule 17(b) to observe state law."  <u>Wolfe</u>, 601 F.Supp. at 427-28; <u>see also</u> <u>T.W. by Enk</u>, 124 F.3d at 895.

Nevertheless, the Court is under a "general duty . . . to protect the interests of infants and incompetents."  <u>Garrick v. Weaver</u>, 888 F.2d 687, 693 (10th Cir. 1989); <u>Decanay v. Mendoza</u>, 573 F.2d 1075, 1079 (9th Cir. 1978).  Where a representative has interests that conflict with the incompetent person whom he represents or the representative is unable, unwilling or fails to participate without reason, then the District Court may appoint a guardian ad litem.  <u>See</u> <u>T.W. by Enk</u>, 124 F.3d at 894; <u>Gardner v. Parson</u>, 874 F.2d 131, 138-39 (3d Cir. 1989); <u>Ad Hoc Comm. of Concerned Teachers ex. rel Minor and Under-Age Students v. Greenburgh #11 Union Free Sch. Dist.</u>, 873 F.2d 25, 29-30 (2d Cir. 1989); <u>Melton</u>, 689 F.2d at 286; <u>Hoffert v. General</u>

12

1   Motors Corp., 656 F.2d 161, 164 (5th Cir. 1981); M.K. v. Harter, 716 F.Supp. 1333, 1335 (E.D.

2   Cal. 1989); see also Noe v. True, 507 F.2d 9, 11-12 (6th Cir. 1974).  The decision to appoint a

3   guardian ad litem for protective purposes is left to the sound discretion of the trial court.  See

4   Melton, 689 F.2d at 286.  The evidence should be "clear that the interests of the duly appointed

5   guardian and the ward conflict."  Id.  Where a legally appointed guardian/conservator refuses to

6   join a lawsuit, there should be "compelling evidence in the record that [the appointed guardian]

7   had abused his trust in refusing to endorse [the] suit."  Id.; cf. also Wolf, 601 F.Supp. at 427-28.

8                                          ***Discussion***

9           In the first motion to appoint a guardian ad litem, this Court held that Plaintiffs had

10  produced insufficient evidence to show a conflict of interest or an abuse of trust by Love.  Now,

11  Plaintiffs are taking a different tack:  Plaintiffs argue that the decision not to participate was not

12  well informed and is thus, grounds for finding a decision that is without reason.  Neither side has

13  presented case law dealing with the appointment of an ad litem on the grounds that a state court

14  appointed conservator/guardian has made a decision that is without reason.  The case law

15  regarding appointment of an ad litem when a state court has already placed a

16  conservator/guardian mostly focuses on the presence or absence of a conflict of interest.  This is

17  not altogether surprising given that any conclusion that a decision is made "without reason"

18  would be highly fact specific.

19          Here, the basis for Plaintiffs' argument is that no reasonable decision could be made by

20  Love since he has not reviewed any of the 15,000 pages of evidence.  This argument has an

21  initial appeal to it.  However, Love's declaration is exhaustive and answers this criticism.  There

22  is no indication in the declaration or attached exhibits that Plaintiffs' requested Love to review

23  the 15,000 pages or any portion thereof.  The declaration and attached exhibits indicate that

24  Plaintiffs see Love as aligned with the defense and are thus wary of disclosing sensitive or

25  privileged information.  In fact, the February 28, 2005, letter indicates that the evidence that

26  Plaintiffs are willing to disclose to Love is the evidence that had been disclosed to the defense.

27

28                                              13

Although the February 28, 2005, letter indicates that Plaintiffs' counsel is willing to answer additional questions, there is a sense that relatively little additional information would be disclosed.

The additional information requested by Love, that is the potential costs to the estate, the merits of the case, the fee structure, and the likelihood of success, is reasonable.  In Love's judgment, insufficient information has been provided and he is left with lingering doubts about the potential financial obligations that may arise against the Estate.   Without the additional information, Love can only rely on what is known to him and on his 50 year experience as a conservator.

The declaration details Love's own experiences with the Estate and with the Plaintiffs and shows approximately four years of familiarity.  It also shows that Love has reviewed a number of accounting and financial documents, including materials provided by Kathryn Hogan.  The declaration shows that many of these financial documents were turned over to a probate court appointed attorney, Ruth Ratzlaff.  Furthermore, the declaration indicates that Love received advice from two knowledgeable sources regarding the diminishing value of the Hogan citrus ranch.  Additionally, Love was informed by Ratzlaff, who is not involved in the federal litigation, that Robinson stopped his investigation because of the impending conservatorship, not because of a lack of merit.  Love also understood that Kathryn Hogan's Board of Accountancy complaint against Towne was found to be meritless.

Thus, the declaration shows that Love has a familiarity with Plaintiffs and the allegations made in the complaint.  Without additional information from Plaintiffs with which to gauge the likelihood of success, the merits of the case, and the potential expense to the Estate, Love's reliance on his experience is reasonable.  Also, the declaration shows that he has discussed the question of joining the lawsuit with his own counsel.  The potential of paying additional fees and costs, both as litigation progresses and as a possible result of a defense verdict, is a reasonable concern.

1    Love's declaration is very specific and explains the bases for his decision not to assent to

2   Thomas Hogan joining the lawsuit.  It is true that Love has not reviewed the 15,000 pages of

3   documents in Plaintiffs' possession.[7]  However, in his capacity as conservator, Love has

4   reviewed many financial and accounting documents involving both the Hogan citrus ranch and

5   Towne's accounting documentation.  Moreover, it appears that Plaintiffs are not willing to

6   disclose much additional information and have not offered to show Love anything other than

7   what has been disclosed to Defendants.  Given the reluctance of Plaintiffs to disclose information

8   to Love, Love's experience and familiarity with the parties and issues of this case, and Love's

9   concern over potential costs and obligations against the Estate that may result from litigation, the

10   Court cannot say that Love's decision against Thomas Hogan being a plaintiff in this case is

11   "without reason."  Cf. Pillsbury, 22 Cal.App.4th at 762-63.

12    Plaintiffs also emphasize that appointing Kathryn Hogan as the ad litem will not cost the

13   estate money.  This may be true for the short term, but it does not answer the concern that costs

14   and fees may be assessed against the Estate should the defense prevail.  Moreover, a state court

15   has appointed a conservator of the estate who is charged with determining whether the

16   conservatee participates in lawsuits.  See Cal. Civ. Code § 372(a); Cal. Prob. Code §§ 1801,

17   1872.  A state appointed conservator may be displaced in favor of an ad litem when the

18   conservator has interests that conflict with the incompetent person or the conservator is unable,

19   unwilling or fails to participate without reason.  See T.W. by Enk, 124 F.3d at 894; Gardner, 874

20   F.2d at 138-39; Greenburgh #11 Union Free Sch. Dist., 873 F.2d at 29-30; Melton, 689 F.2d at

21   286; Hoffert, 656 F.2d at 164; M.K., 716 F.Supp. at 1335.  The Court is unaware of case

22   authority that recognizes volunteering to act as an ad litem as a basis for displacing a state court

23

24

25

26         [7]Given his review of financial and accounting documents and documents provided by Kathryn Hogan, it
27   seems likely that Love is familiar with at least some of the 15,000 pages in Plaintiffs' possession.

28                                                    15

appointed conservator under Federal Rule of Civil Procedure 17.[8]

### **CONCLUSION**

Love's declaration does not show that he made his decision without reason.  Furthermore, to date, Plaintiffs have not presented clear evidence that Love, as the state court appointed conservator, has a conflict of interest with Thomas Hogan or has abused his trust.  See Melton, 689 F.2d at 286.

Accordingly, IT IS HEREBY ORDERED that:

1.     Plaintiffs' motion to appoint a guardian ad litem for Thomas Hogan is DENIED; and

2.     Thomas Hogan remains DISMISSED as a party in the case due to lack of capacity.

IT IS SO ORDERED.

**Dated:    August 24, 2005**              _____/s/ Anthony W. Ishii_____
0m8i78                                   UNITED STATES DISTRICT JUDGE

---

[8]Furthermore, if one could displace a duly appointed conservator of the estate by offering to act as an ad litem at no cost, the general rule against appointment of an ad litem where the incompetent already is represented by a conservator/guardian could be easily circumvented.  Accord T.W. by Enk, 124 F.3d at 896; Melton, 689 F.2d at 286; Wolfe, 601 F.Supp. at 427.

16