**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLOTTE-MARIE HOGAN,<br><br>              Plaintiff,<br><br>       vs.<br><br>MICHAEL ROBINSON, Fresno County Sheriff Deputy, COUNTY OF FRESNO, PATRICIA TOWNE,<br><br>              Defendants,<br>       and<br>CALIFORNIA BOARD OF ACCOUNTANCY,<br><br>              Third Party Defendant. | CASE NO. CV-F-03-6408 LJO WMW<br><br>**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** (Docs. 260, 263) |

## I. Introduction

Defendants Michael Robinson ("Detective Robinson") and County of Fresno (together referred to as "County defendants") and Patricia Towne ("Ms. Towne") (all defendants collectively referred to as "Defendants") filed separate motions for summary judgment against Plaintiff Charlotte-Marie Hogan ("Ms. Hogan"). Although Ms. Hogan filed a response, she did not oppose any of the substantive

1

contentions raised by Defendants.[1] Ms. Hogan pursues 42 U.S.C. §1983 ("Section 1983") claims that Defendants conspired to violate her substantive due process rights to occupation and familial association under the Fifth and Fourteenth Amendments to the United States Constitution. Defendants argue that Ms. Hogan's claims are time-barred, as all relevant events occurred between 1999 and 2001. Additionally, Defendants argue that Ms. Hogan lacks standing to raise conspiracy issues, as the underlying investigation was aimed only at Ms. Hogan's sister, Kathryn Hogan. Defendants further argue that Ms. Hogan cannot establish the essential elements of her claims. This Court finds that Ms. Hogan's claims are time barred, Ms. Hogan lacks standing to assert her claims, and Defendants are entitled to judgment as a matter of law on all claims alleged by Ms. Hogan. Accordingly, Defendants' motions for summary judgments are granted.

## II. Background

The original complaint in this action was filed on October 9, 2003, against County defendants. Ms. Hogan[2] now moves forward on her Corrected Third Amended Complaint ("TAC"), which is dominated by facts involving Ms. Hogan's sister, Kathryn Hogan, Ms. Towne and Detective Robinson. Fundamentally,[3] this action arises out of allegations that Kathryn Hogan abused her parents, Thomas Slade Hogan and Frances Hogan (collectively "Hogan parents") (both now deceased). As early as 1999, issues arose between Kathryn Hogan and Ms. Towne, the Hogan parents' accountant, over finances related to the Hogan parents' citrus farm. Ms. Towne suspected that Kathryn Hogan had undue influence over her parents and depleted their assets. In response, Kathryn Hogan accused Ms. Towne of accounting improprieties related to the Hogan parents' citrus ranch.

---

[1] In her response, Ms. Hogan claims that she does not understand the current motion and cannot defend herself. Ms. Hogan has had over four months to seek legal advice in this matter, but does not explain why she has been unable to obtain counsel. Furthermore, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

[2] The original action was filed by Ms. Hogan's sister, Kathryn Hogan, who was dismissed as a plaintiff on August 29, 2007 (Doc. 254). Ms. Hogan's father, Thomas Slade Hogan, was dismissed as a plaintiff on June 2, 2007 pursuant to various motions and orders (Docs. 12-15, 18, 29, 33-34, 36, 44, 48, 67-68, 71-78, 80-83).

[3] The documents in this case are voluminous and the facts are complex. However, all relevant events occurred before 2002 to render Ms. Hogan's claims time-barred, as discussed below. Furthermore, the vast majority of facts pertain to Kathryn Hogan, who is no longer a plaintiff in this case. Therefore, a brief background of the relevant events is sufficient.

Also in 1999, the Hogan parents' health began to decline. In April 1999, Frances Hogan was admitted to the California Armenian Home in Fresno, California, for convalescence related to various maladies, including dementia. In August 1999, Thomas Slade Hogan was diagnosed with Alzheimer's Disease. On February 21, 2001, a third amendment to the Hogan parents' Living Trust was executed, naming Bruce Bickel ("Mr. Bickel") the sole trustee. Mr. Bickel filed a petition for conservatorship over the Hogan parents in May 2, 2001. After investigation, Fresno County Probate Court investigator Morris Martinez recommended that a conservatorship be established, and conservators for the person and estate of the Hogan parents were in place by October 2001. Ms. Hogan alleges that Ms. Towne and Detective Robinson worked together to get a conservator appointed for the Hogan parents' estate to provide Ms. Towne "unfettered control" over the Hogan parents' finances.

In 2000, Ms. Towne contacted Detective Robinson, a Fresno County Sheriff's Department elder abuse investigator, about her concerns that Kathryn Hogan was misusing the Hogan parents' finances. Detective Robinson conducted an investigation from September 2000 through February 2001. Ms. Hogan alleges that Ms. Towne and Detective Robinson had a pre-existing professional relationship to provide Ms. Towne greater access to and influence over Detective Robinson. Ms. Hogan further alleges that Detective Robinson persisted with his investigation without corroborating evidence of financial abuse and that investigation rendered impossible the citrus ranch to operate profitably. Ms. Hogan further alleges that Detective Robinson continued his investigation to allow Ms. Towne to misappropriate funds and assets from the Hogan parents' estate. Detective Robinson filed an affadavit with the probate court regarding conservation of the Hogan parents, but did not file any charges against Kathryn Hogan upon conclusion of his investigation.

On September 11, 2007, Defendants filed separate motions for summary judgment (Docs. 260, 263). Ms. Hogan filed a response on September 25, 2007. Ms. Towne filed a reply on October 2, 2007. The Court considered the written arguments and evidence submitted and vacated the October 9, 2007. hearing pursuant to Local Rule 78-230(h).

### III. ANALYSIS

**A. Standard of Review**

Fed. R. Civ. P. 56(b) permits a party against whom a claim is asserted to seek "summary

judgment in the party's favor upon all or any part thereof." Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof ...to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If...a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986)

Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990).

With these standards in mind, this Court turns to whether Defendants have demonstrated that they are entitled to summary judgment.

**B.     Section 1983**

Ms. Hogan asserts a claim against Defendants pursuant to Section 1983, which does not itself create rights under federal law.  Section 1983 provides remedies for violations of federal rights only where a "federal statute creates an individually enforceable right in the class of beneficiaries to which [plaintiff] belongs." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005).  Section 1983 provides: "Every person who, under color of any statute, ordinance...of any State or Territory...subjects...any citizen...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party."

Defendants argue that they are entitled to judgment as a matter of law because: (1) this action is time-barred; (2) Ms. Hogan does not have standing to raise this claim; and (3) Ms. Hogan lacks evidence to establish essential elements of her claims.

**1.     Statute of Limitations**

**a.     Time Period**

In Section 1983 actions, federal courts apply the statute of limitations of the forum state for personal injury claims. *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S. Ct. 1938 (1985); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999); *Compton v. Ide*, 732 F.2d 1429, 1432 (9th Cir. 1984).  Prior to January 1, 2003, the statute of limitations in California for personal injury actions was one year, as set forth at Cal. Code Civ. P. §340(3). *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999).  Beginning January 1, 2003, Cal. Code of Civ. P. §335.1 provided a two-year statute of limitations for actions involving "assault, battery, or injury to, or for the death of, an individual cause by the wrongful act or neglect of another."  Cal. Code Civ. P. §335.1 does not apply retrospectively except for actions stemming from September 11. 2001. *Abreu v. Ramirez*, 284 F. Supp. 2d. 1250 (CD Cal. 2003); *see also Tapia v. Superior Court*, 53 Cal. 3d. 282, 287 (1991) ("It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise.").  However, if a potential plaintiff has a pending tort claim as of January 1, 2003, that person would receive an additional year for limitations purposes. *See Mudd v. McColgan*, 30 Cal.2d 463, 468 (1947).

///

### b. Accrual

While state law determines the statute of limitations, "[t]he accrual date of a Section 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 127 S. Ct. 1091, 1095 (2007) (emphasis in original). A Section 1983 "claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Federal courts look to state law to determine when a plaintiff knows or reasonably should have known of his/her right to bring a civil rights action. *Vaughan v. Grijalva*, 927 F.2d 476, 480 (9th Cir. 1991). In California, the issue is controlled by the "discovery rule," which holds that a party knows or should have known of his/her injury either (1) upon actual discovery of his/her injury and its cause or (2) when one could have discovered his/her injury and cause through the exercise of reasonable diligence. *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109 (1988). The accrual of a civil conspiracy claim for statute of limitations purposes is determined "in accordance with the last overt act doctrine." *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986). "Under this doctrine, injury and damage in a civil conspiracy action flow from the overt acts, not from the mere continuance of conspiracy....Accordingly, plaintiffs may recover only for the overt acts...that they specifically alleged to have occurred within the [] limitations period." *Id.* (internal citations and quotations omitted).

### c. Claims arising from alleged conspiracy are time barred

Ms. Hogan alleges that "beginning in June 2000 and continuing through at least February 2003, the plaintiffs were the subject of an elder abuse investigation initiated by, jointly, defendants Towne and Robinson." However, Ms. Hogan's admissions establish that all relevant events occurred during 1999-2001. (See, e.g. Deposition of Charlotte-Marie Hogan ("CH Depo."), 102:7-109:25, 64-66). In her response to the present motion, Ms. Hogan explains that she has "exhausted all of [her] credit, savings and retirement in an attempt to *follow the guidance of the California Attorney General's office who advised [me] to seek [my] 'civil remedies'* for what I still believe were wrongdoings by the defendants."(emphasis added). In response to letters written by Kathryn Hogan in early February 2001, the Attorney General's Office sent Ms. Hogan a letter dated February 28, 2001, which reads in part:

I have reviewed your letter, dated February 1, 2001. *It is my opinion that your*

> *allegations against the Fresno County Sheriff's Office and Detective Michael Robinson*, concerning the handling of the criminal investigation in which you were involved, *are more appropriately addressed by a civil attorney* rather than the Criminal Division of the Attorney General's Office. (Ex.9, Declaration of Jerry Casheros) (emphasis added).

Thus, on February 28, 2001, Ms. Hogan was advised by the Attorney General's office that she should pursue her claims arising from the conduct now alleged in the TAC. A few months after this advice, Ms. Hogan sought legal assistance from Mr. Charles Tulley ("Mr. Tulley"). Mr. Tulley was retained to assist Ms. Hogan in her parents' conservatorship proceedings in the probate court, as well as investigate the allegations pleaded in the TAC. Mr. Tulley admits that when retained by Ms. Hogan in May 2001, he had

> two theories. One theory was that they were–there was a conspiracy between them [Ms. Towne and Detective Robinson] that they were both involved with (sic) to take over the estate of–Tom and Frances. And the second theory was that he [Detective Robinson] was a little bit of a bubbler and that Pat Towne used him to accomplish her end ...to get rid of Kathy in terms of her management and her involvement in the financial affairs and business affairs of her mother and father. (Deposition of Charles Tulley ("Tulley Depo")., 138:25-139:10)

As the California Supreme Court explained in *Jolly*, 44 Cal.3d 1103, 1110-11:

> Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.... Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. (internal citations and quotations omitted).

Ms. Hogan admits that she had at least suspicion of wrongdoing more than one year before January 1, 2003, when Cal. Code Civ. P. §335.1 came into effect, and several years prior to October 9, 2003, the date the original complaint was filed in this matter. Therefore, the one-year statute of limitations pursuant to Cal. Code Civ. P. §340(3) applies. Ms. Hogan was advised to seek a civil remedy in February 2001. The alleged conspiracy ended in early 2001, and no overt acts of the alleged conspiracy have been established after 2001. Ms. Hogan participated in the conservatorship process and retained counsel in 2001 for the same theories now asserted. Based on the uncontroverted evidence, this Court further finds that Ms. Hogan was well-aware of the estrangement taking place within her family in 1999, as discussed more fully below. Ms. Hogan chose to sit on her rights rather than file suit after receiving advice from the Attorney General's office and her own counsel in 2001. When Ms. Hogan finally initiated this action on October 9, 2003, her claims were time-barred.

**2. Standing**

Ms. Towne contends that Ms. Hogan does not have standing to prosecute this lawsuit because the fundamental allegations in this case do not involve her, Ms. Hogan has not suffered cognizable damages, and she has identified no injury attributable to Ms. Towne. To establish standing, a plaintiff must demonstrate: (1) injury in fact, (2) causation and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Further, "in response to a summary judgment motion...the plaintiff can no longer rest on ...mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion, will be taken as true." *Id.* at 561.

The fundamental allegations in this case involve a conspiracy between Detective Robinson and Ms. Towne. The evidence does not support Ms. Hogan's claim that "it was falsely alleged that plaintiffs Kathryn Hogan and Charlotte-Marie Hogan were abusing their elderly parents." Rather, all evidence shows that Kathryn Hogan, not Ms. Hogan, was the subject of the investigation. (Robinson Depo., 120:14-121:1). Mr. Tulley confirms this was Ms. Hogan's understanding in 2001:

> ...the scope of the engagement was to represent Kathryn in fighting the petition for conservatorship before the probate court in Fresno, number one. And number two, to look further into the actions of Pat Towne and Detective Robinson **and to try to understand why they were so out to–to get Kathryn and at the same time why they didn't seem to have any problem with Charlotte**. (Tully Depo., 106:25-107:7) (emphasis added)

Because Ms. Hogan was not the subject of the alleged wrongful government action, she bears the burden of establishing standing in the present lawsuit. As the United States Supreme Court explained in *Lujan*, 504 U.S. 555, 561,

> When the suit is one challenging the legality of government action or inaction...(at the summary judgment stage)...[establishing] standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. When...a plaintiff's asserted injury arises from the government's allegedly unlawful [action against] someone else, much more is needed....The existence of one or more of the essential elements of standing ...becomes the burden of the plaintiff ...to produce causation and permit redressability of injury....[W]hen the plaintiff is not himself the object of the government action...he challenges, standing...is ordinarily substantially more difficult to establish.

Ms. Hogan can not establish elements of causation or redressability. Ms. Hogan failed to provide evidence to demonstrate a causal connection between the investigation of Kathryn Hogan and Ms. Hogan's alleged injuries. Further, the evidence does not support Ms. Hogan's position that a favorable decision will redress her alleged injuries, as discussed more fully below. Accordingly, Ms. Hogan lacks

standing to raise a Section 1983 claim.

### 3. Constitutional Claims

#### a. Conspiracy

Ms. Hogan bases her Section 1983 claim on an alleged conspiracy between a private actor, Ms. Towne, and a state actor, Detective Robinson. "The 'under color' of state law requirement of section 1983 is equivalent to the 'state action' requirement of the Fourteenth Amendment. *United States v. Price*, 383 U.S. 787, 794-95, n.7 (1966). In Section 1983 cases involving private defendants, 'where the impetus for the [alleged wrongful conduct] is private, the State must have significantly involved itself with" the alleged deprivation of the Constitutional rights. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972). The "well-established principle [is] that private [action] must be closely connected to state action to be subject to section 1983 liability." *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1356 (9th Cir. 1981).

To prevail on this theory, Ms. Hogan must prove that Ms. Towne exercised control over Detective Robinson's decision-making, and directed Detective Robinson's action to prevent independent choice in his investigation. *Id.* "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Here, Defendants have provided hundreds of documents to support absence of a conspiracy between Ms. Towne and Detective Robinson. Ms. Hogan produced no evidence to support her conspiracy allegation. "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydroelectric*, 854 F.2d 1538, 1545 (9th Cir. 1988). Thus, Ms. Hogan's conspiracy claim fails.

#### b. Due Process

In a Section 1983 lawsuit, the Court must determine "whether the plaintiff has been deprived of a right secured by the Constitution and the laws." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Ms. Hogan's federal claims are based on the Fifth and Fourteenth Amendments to the United States Constitution. The Fifth Amendment provides that neither life, liberty, nor property may be taken without due process of law. The substantive due process doctrine, based on the Fourteenth Amendment, "forbids

1 the government from depriving a person of life, liberty, or property in such a way that 'shocks the
2 conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los*
3 *Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739 (1987)). The
4 basis of a substantive due process violation must be created or defined by law. *Id.*

### 1.     Occupational Interest

The Supreme Court has recognized that "the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). Although Ms. Hogan alleges that the activities of Defendants "made it impossible for [her] to continue conducting [her] citrus ranch business," the uncontroverted evidence shows that Ms. Hogan was not involved with the operations of her parents' citrus ranch for at least 20 years. (CH Depo, 34:17-35:3). Ms. Hogan has been employed as a teacher in Sacramento since 1994, years prior to the alleged events. (CH Depo., 31:16-19). No facts indicate that Defendants' actions affected Ms. Hogan's ability to choose her profession, or that there was a "complete prohibition of the right to engage in a calling," a required element of this cause of action. *Conn v. Gabbert*, 526 U.S. 286, 292. Therefore, Ms. Hogan cannot establish a violation of her constitutionally protected occupational interest.

### 2.     Familial Association

In *Roberts, v. United States Jaycees*, 468 U.S. 609 (1984), the Supreme Court recognized the right to intimate familial relationships. The constitutional protection of familial relationships covers the parent-child relationship. *Smith v. Fontana*, 818 F.2d 1411, 1417-18 (9th Cir. 1987). Ms. Hogan alleges that the actions of Defendants caused the Hogan family members to become estranged from one another. Ms. Hogan later admits that the "conversations regarding the situation of my father and all the things that were going on started in summer or spring–summer '99, was conversations with Towne and my sister Janet.....I was very angry with *all my siblings*. So as far as I was concerned it was all–it kind of blew up for me and I didn't care to speak to any of them." (CH Depo., 108:14-21)  In 2002, Ms. Hogan began speaking with her sister again. (CH Depo., 108) (emphasis added).

The right of familial association is not extended to temporary disharmony between siblings. *Ward v. San Jose*, 967 F.2d 280, 284 (9th Cir. 1992) ("Neither the legislative history nor Supreme Court

precedent supports an interest for siblings consonant with that recognized for parents and children."); *Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir. 1991) ("plaintiff may recover under section 1983...only where the plaintiffs have alleged a permanent, physical loss of association"). Ms. Hogan fails to demonstrate a constitutionally protected right of temporary sibling disharmony and she provides no evidence of permanent disharmony between her and her parents. Section 1983 "does not provide a remedy for abuses that do not violate federal law." *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992). Moreover, Ms. Hogan admits that she became angry with her siblings in 1999, long before the state actor, Detective Robinson began his investigation. Finally, the uncontroverted evidence establishes that the disharmony between the siblings was due to reasons not related to Ms. Towne or Detective Robinson. Accordingly, Ms. Hogan cannot establish a violation of her Constitutional rights to familial association.

## IV. CONCLUSION

Defendants are entitled to judgment as a matter of law on all claims asserted by Ms. Hogan because they are time-barred, Ms. Hogan does not have standing to assert these claims, and Ms. Hogan fails to establish essential elements of her claims. Accordingly, Defendants' motions for summary judgment are GRANTED. The clerk is directed to enter judgment in favor of Defendants and to CLOSE this case.

IT IS SO ORDERED.

**Dated:   October 9, 2007**               /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE